UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARRY GENE HEGGEM, | CASE NO. C08-0070-MJP |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| JAMES CONGDON, | |
| Defendant. | |

INTRODUCTION AND SUMMARY CONCLUSION

This is civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff Larry Heggem filed this action while incarcerated at the Monroe Corrections Complex ("MCC") in Monroe, Washington. He alleges in his complaint that the lone defendant, James Congdon, D.O., denied him his constitutional right to adequate medical care. Defendant Congdon now moves for summary judgment. Plaintiff has filed both a response and an objection to defendant's motion[1],

---

[1] Plaintiff asserts in both his response and in his objection that defendant's summary judgment motion is premature because discovery has not yet been completed. Plaintiff has also filed a motion seeking an extension of the discovery and dispositive motion filing deadlines. Pursuant to Fed. R. Civ. P. 56(b), a party against whom relief is sought may move for summary judgment at any time. Thus, defendant's motion cannot be deemed premature. While the Court may, in accordance with Fed. R. Civ. P. 56(f), grant a continuance of a pending summary judgment motion to enable a party to conduct the discovery necessary to properly oppose the motion, plaintiff has not persuaded the Court that such a continuance is warranted in this case.

and defendant has filed a reply brief in support of his motion. This Court, having reviewed defendant's motion, all briefing of the parties with respect thereto, and the balance of the record, concludes that defendant's motion for summary judgment should be granted, and this action should be dismissed with prejudice.

## FACTS

At all time relevant to this complaint, plaintiff was a prisoner in the custody of the Washington Department of Corrections. On June 18, 2004, plaintiff was admitted to the Valley General Hospital in Monroe, Washington with a history of severe abdominal pain, severe constipation, and weight loss. (*See* Dkt. No. 31-2 at 2.) An abdominal CT scan conducted following his admission to the hospital revealed a significantly enlarged spleen containing an abnormal, low-density mass. (*Id.*) Dr. Congdon, who was first asked to see plaintiff on June 22, 2004, suspected probable splenic lymphoma, along with acute pancreatitis and chronic constipation caused by extrinsic compression of the pancreas and colon by the enlarged spleen. (*Id.*)

Dr. Congdon recommended an emergency splenectomy, or removal of the spleen, in order to obtain a tissue diagnosis and to relieve compression on the pancreas and colon. (*Id.*) Dr. Congdon consulted with a general surgeon who concurred with his recommendation, and the surgeon attempted the splenectomy on June 25, 2004. (*Id.*) After entering plaintiff's abdomen, the surgeon apparently determined that the mass in plaintiff's spleen was too large and/or too invasive to remove. (*Id.*) However, biopsies were taken of the spleen and the retroperitoneal

---

Accordingly, plaintiff's request for an extension of the discovery and dispositive motion filing deadlines (Dkt. No. 38) is DENIED.

nodes, and the pathology report revealed a diffuse large B-cell lymphoma. (*Id*. at 3.)

Plaintiff was returned to MCC after achieving a stable post-operative condition. (*Id*.) On July 7, 2004, plaintiff was returned to Dr. Congdon's clinic at Valley General Hospital. (*Id*.) Plaintiff was admitted to the hospital and, according to Dr. Congdon, plaintiff received the first of six scheduled cycles of chemotherapy on that date.[2] (Dkt. No. 31-2 at 3.) By the time of his scheduled fourth cycle of chemotherapy on September 8, 2004, plaintiff's hematocrit level was significantly decreased and he was therefore started on weekly Procrit injections. (*Id*. at 4.) Plaintiff received one Procrit injection at Dr. Congdon's office and apparently received three subsequent weekly injections at MCC. (*Id*.) The Procrit treatment successfully raised plaintiff's hematocrit to an acceptable level. (*Id*.)

Plaintiff received his final cycle of chemotherapy on October 27, 2004. (*Id*.) Thereafter, post-treatment CT scans were performed on plaintiff's thorax, abdomen, and pelvis in order to determine plaintiff's response to therapy. (*Id*. at 5.) Plaintiff was scheduled to see Dr. Congdon for a follow-up evaluation on November 24, 2004, apparently to discuss the results of these scans. (*Id*.) However, plaintiff became involved in a dispute with the transporting corrections personnel which disrupted the clinic and the appointment was cancelled. (*Id*.)

The follow-up appointment was apparently rescheduled as Dr. Congdon saw plaintiff on December 30, 2004, at which time he discussed with plaintiff the results of the CT scans. According to Dr. Congdon, he advised plaintiff at that appointment that the abnormality in his

---

[2] Plaintiff contends that he received his first cycle of chemotherapy while he was still sedated and recovering from his surgery on June 25. Neither party has provided the Court with any medical records which might substantiate their respective assertions regarding this fact.

spleen had decreased in size but was still present and required further evaluation. (*Id.*)

On February 17, 2005, plaintiff underwent a PET CT scan, apparently at Dr. Congdon's direction, which revealed that plaintiff was in complete clinical remission. (*Id.* at 5-6.) Dr. Congdon saw plaintiff for a final time on February 22, 2005. (*Id.* at 5.) At that appointment, Dr. Congdon advised plaintiff that no further therapy was needed at that time but that close follow-up was required. (*Id.* at 6.) Plaintiff advised Dr. Congdon that he was scheduled to be released from MCC a week later and Dr. Congdon indicated a willingness to continue treating plaintiff at his clinic. (Dkt. No. 31-2 at 6.) Plaintiff never returned to Dr. Congdon's clinic after the February 22, 2005, visit. (*Id.*)

## DISCUSSION

Plaintiff alleges in his complaint that he was denied constitutionally adequate medical care by Dr. Congdon. Specifically, plaintiff asserts that Dr. Congdon failed to obtain his informed consent before administering chemotherapy and that Dr. Congdon coerced him into continuing with the treatment after he had expressed a desire to stop treatment and after a CT scan showed no more tumor mass. Plaintiff also asserts that Dr. Congdon ignored his complaints that the Procrit injections were causing severe foot and leg pain, that Dr. Congdon disregarded possible side effects of Procrit use, and, that Dr. Congdon deliberately ignored the protocol for using Procrit at one point during plaintiff's chemotherapy treatment. Plaintiff contends that the extended use of Procrit resulted in permanently cramped toe joints.

Finally, plaintiff appears to assert that Dr. Congdon discriminated against him when he cancelled plaintiff's November 24, 2004, appointment, and that Dr. Congdon acted improperly when he refused to show plaintiff the latest CT scans at plaintiff's February 22, 2005, appointment

and lied to him about being in remission.

Defendant, in his pending summary judgment motion, argues that he is entitled to judgment as a matter of law as to plaintiff's medical malpractice claim because plaintiff has not met the certificate-of-merit and 90-day notice requirements of RCW 7.70. Defendant further argues that plaintiff does not have the requisite expert to sustain his medical malpractice claim. As to plaintiff's § 1983 claim, defendant argues that the evidence does not establish a genuine issue of material fact as to his deliberate indifference. Finally, defendant argues that all of plaintiff's claims are barred by the applicable statute of limitations.

While defendant construes plaintiff's complaint as presenting claims of medical malpractice as well as a claim under § 1983, it appears that plaintiff's intent was to allege only claims under § 1983. (*See* Dkt. No. 37 at 3.) Accordingly, the Court need not address defendant's arguments regarding plaintiff's failure to comply with state law requirements for the presentation of medical malpractice claims. The Court will, however, address defendant's remaining arguments as necessary.

## Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may

not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on summary judgment, the court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

<u>Statute of Limitations</u>

Defendant argues that the instant action is barred by the statute of limitations. (Dkt. No. 31 at 17-19.) Because plaintiff asserts claims under § 1983, the Washington statute of limitations governing personal injury actions applies. *See Wilson v. Garcia*, 471 U.S. 261 (1985). Accordingly, the applicable limitations period is three years. RCW 4.16.080(2). Although state law provides the applicable limitations period, federal law determines when the cause of action accrues. *See Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1998). And, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

The record reflects that plaintiff was diagnosed with lymphoma in late June 2004, and that he received chemotherapy treatments from early July 2004 until late October 2004. It appears clear that plaintiff had reason to know of any injury arising out of the manner in which Dr. Congdon managed and conducted plaintiff's chemotherapy treatment well over three years prior to January 16, 2008, the date plaintiff filed the instant action. Accordingly, plaintiff's claims that Dr. Congdon failed to obtain his informed consent before administering chemotherapy and that

Dr. Congdon coerced him into continuing with the treatment are barred by the statute of limitations.

Plaintiff's claims regarding the administration of Procrit are also barred by the statute of limitations. The record reflects that plaintiff received Procrit injections for a period of only four weeks beginning in early September 2004. According to plaintiff's own assertions, his concerns regarding the alleged side effects of the Procrit were immediate, and he attempted, in vain, to get Dr. Congdon to respond to those concerns. It therefore appears clear that plaintiff had reason to know of any injury arising out of the administration of the Procrit by late September or early October of 2004, well over three years prior to the date plaintiff filed the instant action.

Finally, plaintiff's claim that Dr. Congdon discriminated against him when he refused to see plaintiff on November 24, 2004, is barred by the statute of limitations because that claim clearly accrued over three years prior to the date plaintiff filed the instant civil rights action.

In summary, all of plaintiff's claims concerning the administration of chemotherapy, the administration of Procrit, and the refusal of Dr. Congdon to see plaintiff on November 24, 2004, are barred by the statute of limitations and plaintiff's complaint should therefore be dismissed, with prejudice, as to those claims.

### Eighth Amendment

The only claims alleged by plaintiff which are not clearly barred by the statute of limitations are those arising out of his appointment with Dr. Congdon on February 22, 2005. Plaintiff contends that, at that appointment, Dr. Congdon failed to show him the images from his latest CT scan and lied to him about any remaining tumor mass.

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions

of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This duty includes ensuring that inmates receive adequate medical care. *Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. at 834. The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834.

Plaintiff makes no showing that Dr. Congdon's alleged failure to show him the images of his final CT scan caused him any injury whatsoever. Accordingly, that claim fails to implicate Eighth Amendment concerns. Plaintiff's claim that Dr. Congdon lied when he told plaintiff there were no signs of any more tumor mass also fails to implicate Eighth Amendment concerns because there is simply no evidence in the record that Dr. Congdon ever misled plaintiff regarding his medical condition.

Dr. Congdon states in his declaration that the PET CT scan performed on February 17, 2005, revealed no residual lymphoma and, as a result plaintiff was deemed to be in complete clinical remission. (Dkt. No. 31-2 at 6.) Dr. Congdon further states that while plaintiff never returned to him for follow-up treatment, plaintiff did seek follow-up treatment from Dr. Oliver Batson at The Everett Clinic, and Dr. Batson concurred with Dr. Congdon's impression that

plaintiff was in clinical remission. ( *Id.*) If plaintiff has evidence that these conclusions were incorrect, and deliberately so, he has not revealed it.

As plaintiff fails to establish any violation of his Eighth Amendment rights, Dr. Congdon is entitled to summary judgment as to plaintiff's claims arising out of the February 22, 2005, follow-up appointment. Plaintiff's complaint should therefore be dismissed, with prejudice, as to those claims.

## CONCLUSION

For the reasons set forth above, this Court recommends that defendant's motion for summary judgment be granted and that this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 2nd day of September, 2008.

Mary Alice Theiler
United States Magistrate Judge